AO93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>a light blue Apple iPhone in a clear case<br>with a white floral design and black edges,<br>a white popsocket with a multi-colored geometric design,<br>unknown serial number and unknown IMEI<br>(Subject Cellular Telephone A-3) | Case No. 22-038MB |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

### As further described in Attachment A-3

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

### As set forth in Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before *March 8, 2022* *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>any United States Magistrate Judge on criminal duty in the District of Arizona.</u>

*N/A* ☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for _30_ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: *2/22/2022 @ 4 pm*

*Judge's signature*

City and state: <u>Phoenix, Arizona</u>

<u>Honorable Michelle H. Burns, U.S. Magistrate Judge</u>
*Printed name and title*

## ATTACHMENT A-3

*Property to be searched*

The property to be searched is a light blue Apple iPhone in a clear case with a white floral design and black edges, a white popsocket with a multi-colored geometric design, unknown serial number and unknown IMEI (**Subject Cellular Telephone A-3**), which is currently located in an evidence locker at 21711 N. 7th Street, Phoenix, Arizona 85024.

This warrant authorizes the forensic examination of **Subject Cellular Telephone A-3** for the purpose of identifying the electronically stored information described in Attachment B.



**ATTACHMENT B**

*Property to be seized*

1.　　Any records and information found within the digital contents of **Subject Cellular Telephones A-1, A-2, and A-3**, that relate to violations of 18 U.S.C. §§ 2113, Bank Robbery and Incidental Crimes, 924(c), Possession of a Firearm in Furtherance of a Crime of Violence, and 922(g), Felon in Possession of Firearm/Ammunition, including:

    a.　all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of firearms, firearms parts or accessories, or ammunition;

    b.　all information related to buyers or sources of weapons (including names, addresses, telephone numbers, locations, or any other identifying information);

    c.　all bank records, checks, credit card bills, account information, or other financial records;

    d.　all information regarding the receipt, transfer, possession, transportation, or use of bank robbery proceeds;

    e.　any information recording schedule or travel;

    f.　evidence of who used, owned, or controlled the cellular telephone at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, correspondence, and phonebooks;

    g.　evidence indicating how and when the cellular telephone was accessed or used to determine the chronological context of the cellular telephone access,

use, and events relating to crime under investigation and to the cellular telephone user;

h.  evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

i.  evidence of the attachment to the cellular telephone of another storage device or similar container for electronic evidence;

j.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the cellular telephone;

k.  evidence of the times the cellular telephone was used;

l.  passwords, encryption keys, and other access devices that may be necessary to access the cellular telephone;

m. documentation and manuals that may be necessary to access the cellular telephone or to conduct a forensic examination of the cellular telephone;

n.  records of or information about Internet Protocol addresses used by the cellular telephone;

o.  records of or information about the cellular telephone's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

p.  contextual information necessary to understand the evidence described in this attachment.

2.  Any records and information found within the digital contents of **Subject Cellular Telephones A-1, A-2, and A-3,** showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

2

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

This warrant authorizes a review of records and information seized, copied or disclosed pursuant to this warrant in order to locate evidence and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized, copied, or disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>a light blue Apple iPhone in a clear case<br>with a white floral design and black edges,<br>a white popsocket with a multi-colored geometric design,<br>unknown serial number and unknown IMEI<br>(Subject Cellular Telephone A-3) | Case No.  22-038MB |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

### As further described in Attachment A-3

located in the District of Arizona, there is now concealed:

### As set forth in Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 18 U.S.C. § 2113 | Bank Robbery and Incidental Crimes |
| 18 U.S.C. § 924(c) | Possession of a Firearm in Furtherance of a Crime of Violence |
| 18 U.S.C. § 922(g) | Felon in Possession of Firearm/Ammunition |

The application is based on these facts:

### See attached Affidavit of Jamie Marshall, FBI TFO

☒ Continued on the attached sheet.
☐ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Coleen Schoch

*Jamie Marshall*
*Applicant's Signature*

Jamie Marshall, FBI TFO
*Printed name and title*

Sworn to ~~before me and~~ telephonically signed in my presence.

Date: 2/22/2022

*Judge's signature*

City and state: Phoenix, Arizona

Honorable Michelle H. Burns, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A-3

*Property to be searched*

The property to be searched is a light blue Apple iPhone in a clear case with a white floral design and black edges, a white popsocket with a multi-colored geometric design, unknown serial number and unknown IMEI (**Subject Cellular Telephone A-3**), which is currently located in an evidence locker at 21711 N. 7th Street, Phoenix, Arizona 85024.

This warrant authorizes the forensic examination of **Subject Cellular Telephone A-3** for the purpose of identifying the electronically stored information described in Attachment B.



2

## ATTACHMENT B

*Property to be seized*

1.      Any records and information found within the digital contents of **Subject Cellular Telephones A-1, A-2, and A-3**, that relate to violations of 18 U.S.C. §§ 2113, Bank Robbery and Incidental Crimes, 924(c), Possession of a Firearm in Furtherance of a Crime of Violence, and 922(g), Felon in Possession of Firearm/Ammunition, including:

     a.  all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of firearms, firearms parts or accessories, or ammunition;

     b.  all information related to buyers or sources of weapons (including names, addresses, telephone numbers, locations, or any other identifying information);

     c.  all bank records, checks, credit card bills, account information, or other financial records;

     d.  all information regarding the receipt, transfer, possession, transportation, or use of bank robbery proceeds;

     e.  any information recording schedule or travel;

     f.  evidence of who used, owned, or controlled the cellular telephone at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, correspondence, and phonebooks;

     g.  evidence indicating how and when the cellular telephone was accessed or used to determine the chronological context of the cellular telephone access,

use, and events relating to crime under investigation and to the cellular telephone user;

h.  evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

i.  evidence of the attachment to the cellular telephone of another storage device or similar container for electronic evidence;

j.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the cellular telephone;

k.  evidence of the times the cellular telephone was used;

l.  passwords, encryption keys, and other access devices that may be necessary to access the cellular telephone;

m. documentation and manuals that may be necessary to access the cellular telephone or to conduct a forensic examination of the cellular telephone;

n.  records of or information about Internet Protocol addresses used by the cellular telephone;

o.  records of or information about the cellular telephone's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

p.  contextual information necessary to understand the evidence described in this attachment.

2.    Any records and information found within the digital contents of **Subject Cellular Telephones A-1, A-2, and A-3,** showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

This warrant authorizes a review of records and information seized, copied or disclosed pursuant to this warrant in order to locate evidence and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized, copied, or disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, TFO Jamie Marshall, being first duly sworn, hereby deposes and states as follows:

## I.      INTRODUCTION AND AGENT BACKGROUND

1.      I make this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to examine the following cellular telephones (hereafter "**Subject Cellular Telephones**"), which represent evidence and/or instrumentalities of violations of 18 U.S.C. §§ 2113, Bank Robbery and Incidental Crimes, 924(c), Possession of a Firearm in Furtherance of a Crime of Violence, and 922(g), Felon in Possession of Firearm/ Ammunition, to extract the electronically stored information set forth in Attachment B:

    a.  White Apple iPhone in a clear case with black edges with unknown serial number and unknown IMEI (**Subject Cellular Telephone A-1**), and further described in Attachment A-1; and

    b.  Blue Apple iPhone with a clear case with unknown serial number and unknown IMEI (**Subject Cellular Telephone A-2**), and further described in Attachment A-2.

    c.  Light blue Apple iPhone in a clear case with a white floral design and black edges and a white pop socket with a multi-colored geometric design, with unknown serial number and unknown IMEI (**Subject Cellular Telephone A-3**), and further described in Attachment A-3.

2.      Your Affiant is a Task Force Officer with the Federal Bureau of Investigation (FBI), Phoenix, Arizona, and has been since August of 2020. Prior to being assigned as a Task Force Officer with the FBI Violent Crimes Task Force, your Affiant has been employed by the Phoenix, Arizona Police Department since 1999. Since 2017, your Affiant has been assigned to the Phoenix Police Department's Violent Crimes Unit. In that time, your Affiant has been tasked with conducting investigations of Violent Crimes, specifically: Robbery, Kidnapping, Extortion, Aggravated Assault and Serious Assaults.

Your Affiant has received basic and advanced training in Violent Crimes Investigations, crime scene management, evidence collection, and shooting reconstruction.

3.     The statements contained in this Affidavit are based on information derived from your Affiant's personal knowledge, training and experience; information obtained from the knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement officers; analysis of public records; analysis of social media information; and analysis of telephone records.

4.     Your affiant knows that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime. The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal offense. The cellular telephone is also likely to be a storage medium for evidence of crime. From my training and experience, your Affiant believes that a cellular telephone used to commit a crime of this type may contain: data that is evidence of how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

5.     Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, your Affiant has not set forth all of the relevant facts known to law enforcement officers.

## II.     BASIS FOR PROBABLE CAUSE

6.     Your affiant has been investigating a series of four bank robberies committed within the District of Arizona between October 29th, 2021, and December 11, 2021.

7.     Roderick GARRETT was indicted by the grand jury for the following crimes on December 28, 2021, in Case No. CR-21-01099-SPL: four counts of bank robbery occurring on October 29, 2021, November 5, 2021, November 20, 2021, and December

2

11, 2021, respectively, in violation of Title 18, United States Code, Sections 2113(a), 2113(d), and 2, and two counts of using a firearm in furtherance of a crime of violence, on November 20, 2021, and December 11, 2021, in violation of Title 18, United States Code, Sections 922(g)(1), 924(a)(2), and 2.

8.     Your affiant is continuing to investigate GARRETT's accomplices in these bank robberies, as well as in an attempted robbery of a title loan business on November 20, 2021.

**Incident #1: October 29, 2021, Chase Bank,**

**2528 West Southern Avenue, Tempe, Arizona**

*Tempe Police Department Report Number 2021-119501*

9.     On October 29, 2021, at approximately 4:49 p.m., an unidentified Black male suspect entered the Chase Bank, a federally insured institution, located at 2528 West Southern Avenue in Tempe, Arizona. Once inside the bank, the suspect approached the victim/teller and demanded money by yelling "give me the money!" and then banged his hands with closed fists on the teller counter. The suspect then moved to a second teller, who was next to the first teller, and repeated the action of demanding money while banging his hands on the counter. At one point the suspect made the motion toward his waistline which is consistent with reaching for a weapon from his left front waist band; however, neither victim teller saw a weapon. The suspect verbally demanded the teller not to provide any trackers or dye packs. Once the suspect obtained money from the two tellers, the suspect moved to a third teller and yelled again, "give me the money!" The third teller complied and gave the suspect additional money. The suspect fled the bank with approximately $11,918.00 in U.S. currency.



10.     The suspect was described by witnesses and surveillance video as a Black male, approximately 5'8" to 6'0" tall, 25 to 35 years of age, 170 to 190 pounds, with short beard/facial hair, wearing a gray wig, black long sleeve hooded shirt, camouflage pants, white athletic shoes, and large black framed eyeglasses.

11.     A witness followed and watched the suspect as he fled out of the bank. The witness reported to police that the suspect fled northbound on Fair Lane and entered the front passenger side of a gray or silver in color Ford Explorer. Fair Lane is on the west side of the bank and runs north from Southern Avenue

12.     Following this robbery, Tempe Police detectives conducted a canvas for surveillance footage from neighboring businesses.

13.     On October 30, 2021, Tempe Police Department detectives reviewed surveillance video from the business Treasures 4 Teachers in Tempe, which had cameras facing east toward Fair Lane. Detectives also reviewed video captured by a city bus which was in the area of the bank prior to the robbery.

14.     The city bus was parked facing westbound on Huntington Drive near the intersection of Huntington Drive and Fair Lane. Huntington Drive is the next road north of the bank. Video from the bus captured a silver Ford Explorer as it turned from southbound Fair Lane onto eastbound Huntington Drive and went past the bus at approximately 4:46 p.m. The Ford Explorer made a U-turn and stopped behind the bus. Video showed a black male exit the passenger side of the Ford Explorer and start walking south toward the Chase Bank. The black male matched the physical and clothing description of the suspect who

4

later robbed the Chase Bank. The Ford Explorer then drove past the bus and turned northbound on Fair Lane at approximately 4:47 p.m. until out of view of the video from the parked bus.

15.     Shortly after, at approximately 4:50 p.m., the city bus was driving north on Fair Lane past the Treasures 4 Teachers business. Review of the video from the bus, as it drove along Fair Lane, revealed what appeared to be the silver Ford Explorer backed into a parking spot of a business along Fair Lane north of Huntington Drive

16.     Video obtained from Treasures 4 Teachers showed the suspect running north along Fair Lane approximately 45 seconds to a minute after the bus had driven by the store. It is noted that the direction the suspect was running is consistent with, and toward, the area where bus video captured what appeared to be the Ford Explorer backed into a parking spot of a business.

17.     The video from the bus captured the back end of the Ford Explorer with an Arizona license plate and a portion of the license plate digits legible. Investigators determined the middle digits of the license plate were "A97." Investigators researched the partial license plate in law enforcement and other databases and identified the vehicle registration for a silver, 2017 Ford Explorer assigned Arizona license plate HTA97B. It is noted that the body style of the silver Ford Explorer captured on the bus video was similar and consistent with that of the 2017 model year.

18.     Arizona Motor Vehicle Division records listed Arizona license plate HTA97B as being assigned to a silver, 2017 Ford Explorer, VIN ending in C22002, with a registered owner of Rickey Duwayne Garrett, Sr. (RICKEY), date of birth XX/XX/1961, at 1726 West Pollack Street, Phoenix, Arizona.

19.     An internet search identified RICKEY as the pastor of a church located north of the bank near Broadway Road and 48th Street in Tempe. Research revealed that RICKEY has six children. Database checks identified one of those sons as Roderick Duwayne GARRETT, date of birth XX/XX/1985.

20.     Checks of law enforcement databases revealed that Roderick GARRETT was convicted of Bank Robbery in 2010 in U.S. District Court. Additionally, Roderick GARRETT was convicted of Felon in Possession of a Firearm and Ammunition in 2018 in U.S. District Court. Records indicate that Roderick GARRETT is currently on federal supervised release in the District of Arizona until May 2023. Your Affiant viewed photographs of Roderick GARRETT from the Arizona Motor Vehicle Department, the Bureau of Prisons, and recent social media posts, and these photographs look like the person who robbed the Chase Bank on October 29, 2021.

21.     On November 2, 2021, the Court issued and filed under seal a tracking warrant for the silver Ford Explorer, No. 21-8278-MB.

22.     On November 2, 2021, law enforcement placed a tracking device on the silver Ford Explorer at approximately 1700 hours in the parking lot of 2219 South 48th Street, Tempe, Arizona 85282.

### Incident #2: November 5, 2021, Comerica Bank, 2804 North 44th Street, Phoenix, Arizona, 85008

*Phoenix Police Department Report Number 2021-1725211*

23.     On November 5, 2021, at approximately 3:59 p.m., two black male suspects entered the Comerica Bank, a federally insured institution, located at 2804 North 44th Street, Phoenix, Arizona 85008.

24.     The suspects were described by witnesses and were observed on the bank surveillance video as a Black males:

   a.  Suspect 1: approximately 5'8" to 6'0" tall, 25 to 35 years of age, 170 to 190 pounds, with short beard/facial hair, wearing a florescent green, florescent green long sleeve shirt with a yellow reflective traffic, black pants, white athletic shoes, and black sunglasses, and carrying a white bag.

   b.  Suspect 2: approximately 5'10" to 6'1" tall, 25 to 35 years of age, 190 to 215 pounds, tattoos on his neck near his face, wearing a blue medical mask, white

fisherman's hat with an emblem, a bright orange long sleeve shirt, orange reflective vest, blue pants, black gloves, and black and white athletic shoes.

25.     The suspects entered the bank and were greeted by the an employee in the lobby. Both suspects ignored the employee and approached the teller line. Both suspects began yelling at the teller employee behind the bandit barrier glass. The greeter employee saw that the suspects were robbing the bank and pressed a remote robbery alarm on his person. The suspects then grabbed the greeter employee and forced him physically to the teller window. Suspect 1 yelled at the teller to give them the money. The teller began to dispense money, and the manager came into the lobby to see who was yelling.

26.     The suspects saw the manager and demanded that the manager open the back door to the teller windows as they physically held the greeter employee. The manager complied and opened the door, and both suspects went behind the teller bandit barrier and ransacked all the drawers as they demanded more money from the teller. The teller complied and dispensed more money to the suspects. The suspects fled the bank with approximately $25,000 in U.S. Currency.

 



26.     On November 8, 2021 at approximately 1142 hours, investigators returned to the K-MOMO clothing store located at 1602 East Roosevelt, Phoenix, Arizona, and watched video footage from November 4, 2021. They observed GARRETT purchase a florescent green long-sleeved shirt and MENESES purchase a bright orange long-sleeved shirt at this store.

27.     Upon review of bank surveillance footage from the Comerica Bank investigators observed Suspect 1, who was wearing the long sleeve florescent green shirt with a light facial beard, to have the same physical characteristics as Roderick GARRETT. The facial hair was similar to GARRETT's facial hair, the long-sleeved florescent green shirt was similar to a shirt that GARRETT was observed purchasing on November 4, 2021. Suspect 1 also had the same demeanor and modus operandi as did the suspect in the Chase Bank branch robbery described above in October 2021.

28.     Upon review of bank surveillance footage from the Comerica Bank branch, investigators observed Suspect 2 wearing a long-sleeved bright orange shirt. They also observed him to have tattoos on his neck and similar physical characteristics to Ramon MENESES. The physical build, neck tattoos, MENESES's known relation to GARRETT, and his purchase of a bright orange long-sleeved shirt on November 4, 2021, at the K-MOMO store led investigators to believe Suspect 2 to be Ramon MENESES.

8

**Incident #3: November 20, 2021, US BANK,**

**4811 North 83rd Avenue, Phoenix, Arizona, 85033**

*Phoenix Police Department Report Number 2021-1810750*

29.     On November 20, 2021, at approximately 3:50 p.m., two unknown black male suspects committed a bank robbery at the US Bank located inside the Safeway grocery store at 4811 N 83rd Avenue, Phoenix, Arizona. The two suspects entered the grocery store from the south entrance and approached the bank. The suspects initially walked past the teller line, then turned around and went directly to the victim teller's window. The suspects' movement to the teller counter caused a bank customer to move out of the way.

30.     At the teller window, Suspect 1 verbally announced that it was a robbery and repeatedly demanded money from the victim teller. The victim teller realized it was a robbery but was scared and froze. A second bank employee heard Suspect 1 announce the robbery and came over to the victim teller's window. Suspect 1 continued to demand money. During the encounter, Suspect 2 pulled out a gray/silver over black handgun from his waistband area and displayed it to the bank employees. Both the victim teller and the second bank employee saw the handgun. Suspect 2 then put the gun back down.

31.     The second bank employee removed money from the victim teller's drawer and placed it under the bandit barrier. Suspect 1 took the money and demanded more money. The victim teller and the second bank employee showed the suspects the empty teller tray as Suspect 1 continued to demand more money. The suspects then left the bank by walking back to the south entrance of the store and fled. A cash loss of approximately $2,682 resulted from this robbery.

32.     Grocery store surveillance video along and a witness described the suspects as jumping over a block wall south of store along the shopping center property line. The wall went to the backyard of a vacant house in a residential neighborhood. A witness in the neighborhood observed the suspects quickly exit the backyard of the vacant house and

enter a white BMW X3, which had been parked backed into the driveway of the vacant house. The suspects fled the scene in the white BMW X3.

33.     The description of the suspects as described by witnesses and captured on surveillance video was:

    a. Suspect 1: height ~6', age in 30's, average build; wearing: dark colored or camouflage boonie style hat; white or light gray long sleeve shirt; dark colored neck gaiter; black covid-style face mask; light blue gloves with dark colored palms; tan or light colored pants.

    b. Suspect 2: height ~6', age in 30's, average build; wearing: camouflage boonie style hat; white or light gray long sleeve shirt with a paint mark on the sleeve; dark pants; light colored shoes; black colored covid style face covering; a black colored cloth or durag was seen coming out from under the back of the hat down to the shoulders.



34.     Upon review of bank surveillance footage from the US Bank, investigators observed Suspect 1, who was wearing the long sleeve white shirt and blue gloves to have the same physical build and mannerisms as Roderick GARRETT.

35.     Upon review of bank surveillance footage from the US Bank, investigators observed Suspect 2 wearing a long white shirt, green gloves holding a black handgun in

his right hand to have similar physical characteristics to Ramon MENESES. The physical build, and MENESES's known relation to GARRETT led investigators to believe Suspect 2 to be Ramon MENESES.

36.     Investigators researched the license plate of the white BMW bearing Arizona license plate number HWA0JE and identified the vehicle registration for a white 2019 BMW X3, four-door station wagon, vehicle identification number (VIN) ending in 88202 to Leah Christine Miller, date of birth XX/XX/1992, at 1583 S Western Skies Dr, Gilbert, Arizona. Leah MILLER's boyfriend is Ramon MENESES, whose vehicle is also registered to that address.

### Incident #4: November 20th, 2021, "Title Loans" Business
### 2861 North 52nd Avenue, Phoenix, Arizona 85033
*Phoenix Police Department Report Number 2021-1810855*

37.     On November 20, 2021, at approximately 1617 hours, two unknown black males entered a business located at 2861 N 52nd Avenue in Phoenix, Arizona. The business had a sign over its door stating: "TITLE LOANS." The suspects demanded money from the employees of the business. One of the suspects produced a black semi-automatic handgun with a silver slide during the demands for money and pointed the firearm at a victim.

38.     No money or property was taken during the incident.

39.     Investigators obtained surveillance video from inside and outside the "Title Loans" business. The video footage shows that the two suspects walked into the Order Express "check cashing" business in the suite next door to the "Title Loans" business and then walked back towards the "Title Loans" business. The suspects entered the "Title Loans" business and immediately started pointing and looking around the business. The "Title Loans" business has an open floor with employee desks. The male and female employee appeared to speak with the suspects as the suspects walked through the business. A mother and her small child were in the business and can be seen on the video hiding

behind a desk while the employees called 911. The suspects eventually left the business after being told that no money is kept at the business. The second suspect, wearing florescent green gloves, pointed a gun with his right hand at the female victim-employee while he fled the business.

40.     The description of the suspects from witnesses and as captured on surveillance video was similar to the bank robbery that occurred at the US Bank branch located at 4811 North 83rd Ave, Phoenix, Arizona, 85033, approximately 25 minutes prior:

a.  Suspect 1: height ~6', age in 30's, average build; wearing: dark colored boonie-style hat; white or light gray long sleeve shirt; dark colored neck gaiter; no mask; light blue gloves with dark colored palms; tan or light-colored pants.

b.  Suspect 2: height ~6', age in 30's, average build; wearing: camouflage boonie-style hat; white or light gray long sleeve shirt with a paint mark on the sleeve; dark pants; light colored shoes; black covid-style face covering; a black durag seen coming out from under the back of the hat down to the shoulders; florescent green work gloves.

 






**Incident #5: December 11, 2021, First Convenience Bank**

**1602 East Roosevelt Street, Phoenix, Arizona, 85006**

*Phoenix Police Department Report Number 2021-1927790*

41.    On December 11, 2021, at approximately 1656 hours, an unknown black male committed an armed robbery at First Convenience Bank inside the Ranch Market at 1602 E Roosevelt Street in Phoenix, AZ 85003. The black suspect entered the bank and immediately went to the teller window, pointed a gun at the victim-teller and demanded money. The suspect became impatient and banged his gun on the teller counter. The suspect then demanded money from a second victim-teller while pointing the gun at her as well.

Both tellers complied and gave the suspect a total of approximately $3863.00 in U.S. Currency. The suspect fled to the east.

42.     The supect was described as: black male, height ~6', age in 30's, average build, light facial hair; wearing: camouflage boonie-style hat; red and black floral (roses) long-sleeve button-up shirt; dark sunglasses; no mask; black gloves; dark pants; and brown shoes.

43.     Upon review of bank surveillance footage from the First Convienence Bank, investigators observed the suspect, who was wearing the long-sleeve floral-print shirt, no mask, and black gloves, to have the same physical build and mannerisms as Roderick GARRETT. The suspect also had similar facial hair, nose and mouth structure to GARRETT.

 

12/11/2021 16:56:08.11

Surveillance
RC914Roosevelt

12/11/2021 16:55:28.88
Surveillance
RC914Roosevelt

## Residential and Vehicle Search Warrants

44.     On December 15, 2021, the the Court issued and seven search warrants authorizing the search of the following three residences and four vehicles:

      a.  21-384MB, 745 North Port Drive, Gilbert, Arizona 85233;

b. 21-385MB, 1726 West Pollack Street, Phoenix, Arizona 85041;

c. 21-386MB, 1583 South Western Skies Drive, Gilbert, Arizona 85296;

d. 21-387MB, a silver, 2017 Ford Explorer, four-door SUV, bearing Arizona license plate number HTA97B and vehicle identification number (VIN) ending in 22002;

e. 21-388MB, a black 2017 BMW 640, four-door sedan, bearing Arizona license plate number 3RA0A9A, and vehicle identification number (VIN) ending in 39751;

f. 21-389MB, a white 2019 BMW X3 Station wagon four-door bearing Arizona license plate number HWA0JE, and vehicle identification number (VIN) ending in 88202; and

g. 21-390MB, a white 2019 Dodge Challenger two door coupe with black stripes on the sides, bearing Arizona license plate number YMA5TB, and vehicle identification number (VIN) ending in 12004.

45.    On December 15, 2021, from approximately 1645 to 2100 hours, investigators served six of those warrants. They seized the following items of interest:[1]

a. From 1726 West Pollack Street, Phoenix, Arizona 85041, law enforcement seized: Item 1: Neon Yellow Beanie (on the floor); Item 2: Neon Yellow Long Sleeve Shirt (main closet); Item 4: Black Jeans with brown belt (floor in closet); and a red Apple iPhone in a red and black case with unknown serial number and IMEI ending in 8921, which was located on GARRETT's person when he was taken into custody during the search.

 i. The first three items were compared to surveillance video from the bank robbery at 2804 North 44th Street on November 5, 2021, and your affiant believes them to be the items worn in that robbery.

b. From 1726 West Pollack Street, Phoenix, Arizona 85041, law enforcement

---

[1] This is not a comprehensive list of the items seized.

also seized: Item 9: Gucci Sunglasses (on shelf).

    i. This item was compared to surveillance video from the bank robbery on October 29, 2021, at 2528 West Southern Avenue, and your affiant believes them to be the same glasses worn during the robbery.

c. From 1726 West Pollack Street, Phoenix, Arizona 85041, law enforcement also seized: Item 6: $859.00 in U.S. Currency in the dresser drawer of GARRETT's father, which GARRETT's father stated did not belong to him.

d. From 1583 South Western Skies Drive, Gilbert, Arizona 85296, law enforcement seized: Item 4: 1 black Glock model 45 Serial Number BSNE032, 1 magazine containing 8, 9mm rounds (under bed on Ramon's side); Item 10: 1 white iPhone (**Subject Cellular Telephone A-1**) and 1 blue iPhone (**Subject Cellular Telephone A-2**), both cellular phones were collected from the couch where Ramon MENESES was sitting when contacted by agents upon service of the search warrant; Item 12: 1 light blue iPhone with a clear case with white floral pattern and pop socket (**Subject Cellular Telephone A-3**) collected from the recliner where Lean MILLER was sitting when contacted by agents upon service of the search warrant.

    i. Item 4, the black Glock 45 was compared to surveillance video from the bank robbery on December 11, 2021, at 1602 East Roosevelt, and your affiant believes it to be the same firearm used in that bank robbery.

e. Nothing was seized from the silver 2017 Ford Explorer. However, in an interview, GARRETT admitted to driving this vehicle.

f. From the black 2017 BMW 640, four-door sedan, bearing Arizona license plate number 3RA0A9A, and vehicle identification number (VIN) ending in 39751, law enforcement seized: Item 1: Nike Air Jordan Tennis Shoes, Size 11 ½, gray, white, green and gold in color: (in trunk).

      i.  This item was compared to surveillance video from the bank robbery at 4811 North 83rd avenue, and your affiant believes them to be the same shoes worn in that bank robbery.

  g.  From the white 2019 BMW X3 Station wagon four-door bearing Arizona license plate number HWA0JE, and vehicle identification number (VIN) ending in 88202, law enforcement seized Item 1: Oro Express Pawn Shop receipts of a two-tone handgun pawned by Leah Miller (Ramon MENESES's girlfriend) (center console).

      i.  Law enforcement used the receipt to recover this handgun. This item was compared to surveillance video from the bank robbery at 4811 North 83rd Avenue on November 20, 2021, and your affiant believes it to be the silver and black handgun used in that bank robbery.

46.    From the white 2019 Dodge Challenger two door coupe with black stripes on the sides, bearing Arizona license plate number YMA5TB, and vehicle identification number (VIN) ending in 12004, which was located parked in the garage at 1583 South Western Skies Drive, Gilbert, Arizona, law enforcement seized one white iPhone with brown/clear case with cracked screen was located in backpack in backseat.

47.    Your affiant conducted an interview of GARRETT on December 15, 2021, at 1800 hours. He denied participation in the bank robberies. He did admit to being at the Circle K located at 15 West Southern Avenue, Phoenix, Arizona, on December 11, 2021, at 2057 hours and to driving the Ford Explorer.

### Continued Investigation

48.    On December 10, 2021, a search warrant was issued for information associated with the cellular telephone assigned call number (602) 800-4190, from October 29, 2021, through the date of the search warrant, stored at premises controlled by T-MOBILE, No. 21-MB-5338.

49.     The cellular telephone assigned call number (602) 800-4190 was subscribed to Debra Garrett, Roderick GARRETT's stepmother. Information obtained from the Federal Probation Officer overseeing Roderick GARRETT's federal supervised release confirmed that GARRETT used telephone number (602) 800-4190, as recently as on or about November 18, 2021, the Probation Officer had contacted GARRETT using that telephone number.

50.     On December 14, 2021, investigators received the call detail records for call number 602-800-4190 from T-Mobile. The records showed that the cellular phone assigned this number was turned off during the time at which all four bank robberies took place, and then turned back on again after those robberies were complete.

51.     The records did not show that the phone was turned off at any other times.

52.     The cellular telephone did appear to be turned on during the armed robbery attempt of the Title Loans on November 20, 2021, at 1622 hours. On November 20, 2021, at 1622 hours, GARRETT had several phone calls and text messages. The cellular telephone tower placed him in the area of the Title Loans at 2861 North 52nd Avenue.



53.     Call detail records also showed GARRETT to be in contact with Ramon MENESES, who is known from GARRETT, previous police reports, and T-Mobile subscriber information to use cellular telephone number (480) 432-8626, and Marque DELPINO, who is known from GARRETT, a recent police report, and T-Mobile subscriber information to use cellular telephone number (480) 803-1088.

54.     On December 16, 2021, investigators contacted Glendale Police regarding the Black Glock .9mm, model 45, Serial number BSNE032, as it had been reported stolen by Marque DELPINO, who reported that it was stolen on December 10, 2021 in Glendale Arizona, one day before the fourth bank robbery described above.

55.     Marque DELPINO is a known associate of GARRETT and is documented as a contact in the call detail records for GARRETT's cellular telephone history for over 130 calls from October 29, 2021 to December 13, 2021 to DELPINO's phone number of (480) 803-1088.

56.     Also, on December 16, 2021, investigators conducted follow up on the pawn receipt collected from the white 2019 BMW X3 station wagon registered to Leah MILLER (MENESES's girlfriend). The slip was dated December 11, 2021 (the date of the fourth robbery), identified the pawn shop as Oro Express at 1950 North Arizona Avenue, Chandler, Arizona, and Cash America Pawn Shop at 1098 North Arizona Avenue, Chandler, Arizona, listed Leah MILLER as the pawner, and her contact phone number as (602) 760-6102.

57.     Investigators reviewed surveillance footage from the pawn shop for the dates listed on the pawn receipts. Investigators observed MENESES and MILLER pawning the two-tone Smith and Wesson handgun. In the video MENESES and MILLER both handle the gun, then MILLER signed the pawn slip and pawned the gun in her name.

58.     Using the pawn slip recovered from the white 2019 BMW X3 station wagon registered to Leah MILLER, investigators obtained a two-tone Smith and Wesson handgun with serial number FDE3610 at Cash America Pawn, 1098 North Arizona Avenue, Chandler, Arizona, which had been pawned by Leah MILLER on December 11, 2021.

59.     A comparison of the two-tone Smith and Wesson and images from the third bank robbery and the attempted Title Loans business robbery, investigators believe that the firearms appear similar.



60.     On December 17, 2021, when investigators served the search warrant a 745 North Port Drive, Gilbert, Arizona, they spoke with Kayla Reinhardt. Reinhardt is known to be the mother of GARRETT's child and his ex-girlfriend. During the conversation, Reinhardt distanced herself from GARRETT and reluctantly identified GARRETT in the surveillance video image from the bank robbery on December 11, 2021. Reinhardt also advised investigators she did not like Ramon MENESES (aka "Pronto") and did not want him around her residence. Reinhardt identified "Pronto" in a booking photograph of Ramon MENESES.

61.     Based on the following facts: (1) Marque DELPINO is a known associate of GARRETT and is documented over 130 times of cellular telephone contact with GARRETT on his listed T-Mobile cellular telephone number (480) 803-1088; (2) Marque

DELPINO reported stolen a firearm found in Ramon MENSES's bed during the execution of a search warrant, which appears similar to the firearm used in the fourth bank robbery; (3) Ramon MENESES known associate of GARRETT and is documented over 120 times of cellular telephone contact with GARRETT on his listed T-Mobile cellular telephone number (480) 432-8626; (4) Ramon MENESES's physical build matched the second and third bank robberies and the attempted armed robbery at the Title Loans business; (5) the getaway vehicle used in the third bank robbery was identified by witnesses as a White BMW X3 bearing Arizona License plate HWA0JE, which is registered to Leah MILLER, Ramon MENESES's girlfriend, at their shared address; (6) Leah MILLER and Ramon MENESES are seen on surveillance video on December 11, 2021, pawning a gun that appears similar to the two-tone gun used in the third bank robbery and the attempted robbery of the Title Loans business; (7) the pawn receipt for Leah MILLER for a two-tone handgun was obtained from Leah MILLER's White 2019 BMW X3 during search warrant 21-389MB; and (8) Leah MILLER's AT&T cellular telephone number (602) 760-6102 is listed on the December 11, 2021, pawn receipt, your Affiant submits there is probable cause to believe that the items listed in Attachment B will be found in the contents of the **Subject Cellular Telephones**.

62.     The **Subject Cellular Telephones** are currently in the lawful possession of the FBI. On December 15th, 2021, your Affiant obtained the **Subject Cellular Telephones** from Leah MILLER and Ramon MENESES' residence at 1583 South Western Skies Drive, Gilbert, when search warrant 21-286MB was served. **Subject Cellular Telephones A-1 and A-2** were located on the couch where Ramon MENESES was contacted in the residence and the **Subject Cellular Telephone A-3** was located on the recliner where Leah MILLER was contacted. Therefore, while the FBI might already have all necessary authority to examine the device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the device will comply with the Fourth Amendment and other applicable laws.

63.     The **Subject Cellular Telephones** are currently in storage at 21711 N. 7th Street, Phoenix, Arizona 85024. In my training and experience, I know that the **Subject Cellular Telephones** have been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the **Subject Cellular Telephones** first came into the possession of the FBI.

### III.   ITEMS TO BE SEIZED

64.     Based upon the facts contained in this Affidavit, your Affiant submits there is probable cause to believe that the items listed in Attachment B will be found in the contents of the **Subject Cellular Telephones**.

65.     Based on my training, education, and experience, and discussions with other trained law enforcement personnel, along with information provided by sources of information and confidential sources, your Affiant knows that bank robbers and persons who possess and use firearms illegally commonly use cellular telephones to communicate with other criminals regarding robbery-related activities and the acquisition and disposal of firearms and ammunition through the use of telephone calls, text messages, email, social media, and other internet- and application-based communication forums. Moreover, bank robbers and prohibited possessors commonly use other capabilities of cellular telephones to further their illegal activities. Therefore, evidence related to bank robberies and the possession and use of firearms and ammunition is likely to be found on the **Subject Cellular Telephones**.

66.     The **Subject Cellular Telephones** were obtained December 15, 2021, during search warrant 21-286MB next to Leah MILLER and Ramon MENESES inside their shared residence. MENESES has used electronic storage media to send messages and to post photographs and updates on social media of profits gained and clothing worn during robberies. Ramon MENESES is believed to have participated in two bank robberies and an attempted robbery of another business. He is a convicted felon who used a firearm in the latter two instances. Leah MILLER's car was used as a getaway vehicle in the third

robbery, and she was observed on surveillance video pawning the firearm that MENESES used in same robbery for which her car was used. Cellular telephones are the primary source of communication during, prior to and after the commission of a crime.

67.     In addition to items which may constitute evidence and/or instrumentalities of the crimes set forth in this Affidavit, your Affiant also requests permission to seize any articles tending to establish the identity of persons who have dominion and control over the **Subject Cellular Telephones**.

## IV.     DIGITAL EVIDENCE STORED WITHIN A CELLULAR TELEPHONE

68.     As described in Attachment B, this application seeks permission to search for records and information that might be found in the contents of the Subject Cellular Telephones. Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

69.     *Probable cause.* Your Affiant submits that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on the **Subject Cellular Telephones** for at least the following reasons:

a.     I know that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime. The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal offense. The cellular telephone is also likely to be a storage medium for evidence of crime. From my training and experience, your Affiant believes that a cellular telephone used to commit a crime of this type may contain: data that is evidence of how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

23

b.      Based on my knowledge, training, and experience, your Affiant knows that cellular telephones contain electronically stored data, including, but not limited to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

c.      Based on my knowledge, training, and experience, your Affiant knows that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a cellular telephone, deleted, or viewed via the Internet. Electronic files downloaded to a cellular telephone can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a cellular telephone, the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.

d.      Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a cellular telephone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

70.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the cellular telephone was used, the purpose of the use, who used it, and

when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of **Subject Cellular Telephones** because:

      a.    Data in a cellular telephone can provide evidence of a file that was once in the contents of the cellular telephone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

      b.    As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the cellular telephone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone was remotely accessed, thus inculpating or exculpating the owner. Further, activity on a cellular telephone can indicate how and when the cellular telephone was accessed or used. For example, as described herein, cellular telephones can contain information that log: session times and durations, activity associated with user accounts, electronic storage media that connected with the cellular telephone, and the IP addresses through which the cellular telephone accessed networks and the internet. Such information allows investigators to understand the chronological context of cellular telephone access, use, and events relating to the crime under investigation. Additionally, some information stored within a cellular telephone may provide crucial evidence relating to the physical location of other evidence and the suspect.

For example, images stored on a cellular telephone may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The geographic and timeline information described herein may either inculpate or exculpate the user of the cellular telephone. Last, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

   c. A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone was used, the purpose of its use, who used it, and when.

   d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one cellular telephone is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

   e. Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or

absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

71.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit imaging or otherwise copying the contents of the **Subject Cellular Telephones**, including the use of computer-assisted scans.

72.    *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## V.    CONCLUSION

73.    I submit that there is probable cause to believe that the items listed in Attachment B, which constitute evidence, fruits, and/or instrumentalities of violations of 18 U.S.C. § 2113 (Bank Robbery), 18 U.S.C. § 924(c) (Possession of a Firearm in Furtherance of a Crime of Violence), and 18 U.S.C. § 922 (Felon in Possession of Firearm/ Ammunition), are likely to be found contents of the **Subject Cellular Telephones** further described in Attachments A-1 and A-2 and A-3.


*Jamie Marshall*
TFO Jamie Marshall
Federal Bureau of Investigation

Subscribed and sworn ~~to before me~~ telephonically this __22__ day of Feburary 2022.

HONORABLE MICHELLE H. BURNS
United States Magistrate Judge